UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Hon. Paul D. Borman

Case No. 21-20031

v.

Misc. Case No. 21-50554

FCA US LLC,

Defendant.

---

**GOVERNMENT'S RESPONSE TO MOTION FOR RECOGNITION OF
CRIME VICTIM STATUS AND FOR RESTITUTION**

---

DAVID A. GARDEY
ERIN S. SHAW
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9100

## <u>STATEMENT OF ISSUES PRESENTED</u>

Have movants failed to establish the causal link necessary for statutory victim

status and restitution?   **Yes.**

## <u>CONTROLLING OR MOST APPROPRIATE LEGAL AUTHORITY</u>

Crime Victims' Rights Act, 18 U.S.C. § 3771

Mandatory Victim Restitution Act, 18 U.S.C. § 3663A

Labor Management Relations Act, 29 U.S.C. §§ 186(a)(2) & (4)

*In re McNulty*, 597 F.3d 344 (6th Cir. 2010)

*United States v. Sexton*, 894 F.3d 787 (6th Cir. 2018)

*United States v. McMaster*, 343 F.2d 176 (6th Cir. 1965)

*In re Rendon Galvis,* 564 F.3d 170 (2d Cir. 2009)

*In re Fisher*, 649 F.3d 401 (5th Cir. 2011)

*In re Doe*, 264 F. App'x 260 (4th Cir. 2007)

*United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453 (D.N.J. 2009)

*In re Korff*, No. 16-12984, 2016 WL 4537815 (E.D. Mich. Aug. 21, 2016)

*United States v. Sharp*, 463 F. Supp. 2d 556 (E.D. Va. 2006)

# INTRODUCTION

Of course, in some broad sense, tens of thousands of union members were victimized by corruption of the FCA-UAW collective bargaining process -- in much the same way that hundreds of thousands of Detroiters were victimized by Kwame Kilpatrick's corruption of the mayor's office. But that kind of generalized harm does not trigger federal statutory victim rights or a right to restitution.

Petitioners are approximately 230 current and former FCA employees who are represented by the same attorney in various civil litigation against FCA, the UAW, and individuals associated with each. Petitioners seek restitution in *United States v. FCA US LLC*, Case No. 21-20031, claiming to have lost money due to either the administration of the collective bargaining agreements between FCA and the UAW, or the UAW's handling of grievances during the pendency of the Taft-Hartley conspiracy.

Counsel for the United States takes victims' rights, and its obligations under the relevant statutes, very seriously. We have communicated with Petitioners' counsel productively since the plea hearing, including prior to his filing of the instant motion. But nothing he has presented changes our position. We have not been able to identify a provable instance where union members were directly and proximately harmed for purposes of the CVRA and MVRA after six years of investigating, and

1

Petitioners have not established the necessary causal link to qualify as statutory victims or obtain restitution.  For these reasons, the United States must oppose the instant motion, and request that it be denied.

## PROCEDURAL POSTURE

The United States filed an information, charging FCA with one count of conspiracy to violate Section 186(a)(2) of the Labor Relations Management Act (commonly known as the Taft-Hartley Act), in violation of 18 U.S.C. § 371.  FCA pleaded guilty to that information, pursuant to a Rule 11 plea agreement.  The plea agreement expressly states that the "parties agree that there is no restitution in this matter."  Case No. 21-20031, ECF No. 14, PageID.26.   This Court accepted FCA's guilty plea and took the plea agreement under advisement. Case No. 21-20031, ECF No. 15, PageID.114.  Sentencing is set for June 21, 2021.

Petitioners filed the instant motion on April 25, 2021.  They do not object to the resolution of the criminal case against FCA or to any other aspect of the Rule 11 plea agreement.  Rather, they seek to be categorized as victims only for "purposes of receiving restitution from FCA."  Case No. 21-50554, ECF No. 7, PageID.370.

The United States submits this response, consistent with the scheduling order entered on April 30, 2021.

Procedurally, given the parties' agreement that there is no restitution in this matter, the Court would have to reject the parties' Rule 11 plea agreement in order to award the movants the restitution sought.

## OVERVIEW OF THE VICTIM STATUTES

The Crime Victims' Rights Act ("CVRA") provides a "crime victim" with ten statutory rights.   18 U.S.C. § 3771 (a)(1)-(10).  Although one of these enumerated rights is the "right to full and timely restitution as provided in law," this provision "is not considered to confer substantive rights to restitution."   *United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 533 (D.N.J. 2009); *see also id.*, at 482 ("The CVRA does not itself confer a right to restitution."); *In re Korff*, No. 16-12984, 2016 WL 4537815, at *8 (E.D. Mich. Aug. 21, 2016) (Borman, J.) (citing *Atlantic States*).   The crime victim or his attorney may assert the rights described in the CVRA, without government involvement.  18 U.S.C. § 3771(d)(1). The CVRA does not provide a crime victim, or a movant seeking to establish crime victim status, with a right to discovery.  If the district court denies relief under the CVRA, the movant's remedy is a petition for a writ of mandamus.  18 U.S.C. § 3771(c)(3).  "A 'crime victim' is defined under the CVRA as a person 'directly and proximately harmed as a result of the commission of a Federal offense or an offense

3

in the District of Columbia.'" *In re McNulty*, 597 F.3d 344, 349, n.6 (6th Cir. 2010) (quoting 18 U.S.C. § 3771(e)).

The Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, preceded the CVRA.  In *United States v. Bold*, 412 F. Supp. 2d 818, 824 (S.D. Ohio 2006), the court provided a helpful discussion of the MVRA's structure and history. It explained that the congressional "conference committee emphasized that cases 'in which the amount of the victim's losses are speculative, or in which the victim's loss is not causally linked to the offense, should not be subject to mandatory restitution.'" *Id.*  (citing S. Rep. 104-179, 1995 WL 731704, at *19).

The MVRA provides for restitution for five enumerated types of federal crimes.  18 U.S.C. § 3663A(a)(1).  It defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).   Courts are authorized to order restitution to persons other than a "victim" only "if agreed to by the parties in a plea agreement." 18 U.S.C. § 3663A(a)(3).  Here, the parties' plea agreement states the

4

opposite: "there is no restitution in this matter." Case No. 21-20031, ECF No. 14, PageID.26.

Both the CVRA and MVRA have "direct and proximate" causation standards. *See McNulty*, 597 F.3d at 350; *Atlantic States*, 612 F. Supp. 2d at 463.

## **ARGUMENT**

The risk of harm to the public where union officials are compromised is immense. Unions are supposed to act on behalf of workers to make sure that they have the best possible wages, benefits, and working conditions. Taft-Hartley violations affect the lives of tens of thousands of hourly FCA-UAW workers. In addition, one of the reasons Congress established the Taft-Hartley Act's bright-line rule prohibiting employers from giving any money or things of value to union officials was to prevent even the appearance or question of corruption that would undermine the faith of union members in their leaders. This is true even when there is *no* evidence that the employer sought to affect any particular decision by a union official. The illegal prohibited payments made in this case eroded the public trust in the collective bargaining process.

Petitioners opine that "presumably," the government has "obtained enough information to link the payment and acceptance of bribes with the damage done to the plaintiffs." ECF No. 7, PageID.391. Throughout this extensive, 6-year

investigation, the government diligently looked for proof of exactly the types of direct and proximate harms that Petitioners assume.  Regrettably, Petitioners are mistaken.  The investigation uncovered numerous labor outcomes that seemed potentially -- and suspiciously -- symbiotic with FCA's prohibited payments.  But suspicion and speculation are just that.   After the expenditure of much investigative effort, the record simply did not contain sufficient evidence of any provable quid pro quo resulting in a specific direct and proximate harm to any union member, beyond the general loss of confidence in leadership that is experienced by all stakeholders in a corruption case.

Importantly, FCA pleaded guilty to conspiring to violate 29 U.S.C. § 186(a)(2), which does *not* require a showing that FCA was seeking to influence the actions of any UAW official on any particular collective bargaining issue, or that FCA sought to affect any specific grievance or to affect the grievance process in general.  And so, in resolving the case with FCA short of trial, the government agreed that there is no restitution in this matter, given the very nature of the guilty plea by FCA.  The information Petitioners present now does not alter this conclusion.

6

**I.** **Petitioners Are Not Statutory Victims Because They Have Not Established that They Are Persons Directly and Proximately Harmed as a Result of FCA's Commission of the Taft-Hartley Conspiracy.**

The issue here is not whether union members could ever be statutory victims in a Taft-Hartley conspiracy, but rather, whether the instant movants can establish that they were directly and proximately harmed by FCA's improper payments to UAW officials on the facts of this case.  Unfortunately, they cannot.

"The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *McNulty*, 597 F.3d at 350; *In re Rendon Galvis,* 564 F.3d 170, 175 (2d Cir. 2009).  The necessary inquiry is "fact-specific." *Id*.  "An act is a but-for cause of an event if the act is a *sine qua non* of the event—if, in other words, the absence of the act would result in the non-occurrence of the event." *In re Fisher*, 649 F.3d 401, 403 (5th Cir. 2011) (denying victim status and restitution in a public corruption case).

Petitioners generally allege that because of FCA's prohibited payments, UAW officials manipulated the collective bargaining and grievance processes, resulting in losses of pay, seniority, and benefits, and for some, longer commutes to work.  So, in order to establish but-for causation, they need to show that these injuries would not have occurred in the absence of FCA's criminal conduct. *Fisher*, 649 F.3d at 404, n.12.  The investigative case evidence does not support this conclusion.

**A.    The Information, Plea Agreement and Plea Colloquy Do Not Establish But-For Causation.**

In some cases, determination of causation is easy, because the defendant admits the but-for nexus in the plea materials.  That did not happen here.

To determine whether a movant has statutory victim status, the court  "must (1) look to the offense of conviction, based solely on facts reflected in the jury verdict or admitted by the defendant; and then (2) determine, based on those facts, whether any person or persons were 'directly and proximately harmed as a result of the commission of that Federal offense.'"  *McNulty*, 597 F.3d at 351.

FCA pleaded guilty to § 371 conspiracy to violate Section 186(a)(2) of the Taft-Hartley Act.  The elements of the predicate labor offense are:

(1)    an employer or person acting in the interest of an employer;

(2)    willfully paid, lent, or delivered—or agreed to pay, lend, or deliver—money or other thing of value;

(3)    to an officer or employee of a labor organization representing employees of the employer;

(4)    the employer's employees were employed in an industry affecting interstate or foreign commerce; and

(5)    with the intent to benefit himself or other persons he knows are not permitted to receive a payment, loan, money, or other thing of value.

This crime "plainly does not require proof of the quid pro quo."  *See United States v. McMaster*, 343 F.2d 176, 180 (6th Cir. 1965).  While the basic purpose of the

8

statute "is to prevent corruption in labor-management relationships affecting interstate commerce" (*id*.), the crime is complete even without any adverse consequences to the union workers represented by the union officials who accepted the prohibited payments from the interstate employer.  *See*, *e.g.*, *In re Local #46*, 568 F.3d 81, 85 (2d Cir. 2009) (union was not statutory victim; money laundering conspiracy for which defendant was convicted was "complete" when co-conspirator transferred funds to defendant, and did not include defendant's subsequent cash payments to union's members with the monies defendant received in the laundering process).

In this case, FCA's offense of conviction is somewhat limited.  FCA did not plead guilty to any crime involving Section 186(a)(4), the portion of the Taft-Hartley Act that requires proof that the employer made the prohibited payment "with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees."  29 U.S.C. § 186(a)(4).  Instead, FCA pleaded guilty to conspiring to violate Section 186(a)(2).  Section186(a)(2) requires something less: a mere showing that FCA made the prohibited payment to an official of a union representing its employees.  *See* 29 U.S.C. § 186(a)(2).  By its very nature, the crime to which FCA pleaded guilty did not carry with it an intent or the effect of directly harming union members by way of affecting the particular decisions of a union

9

official.  As a result, FCA's guilty plea did not establish the necessary direct and proximate harm to union members.

No quid pro quo was required to establish the elements of the crime charged in this case, and FCA has not made a factual basis that its improper payments to union officials directly and proximately caused negative labor consequences to any union members.  Case No. 21-20031, ECF No.14, PageID.48-56 (factual basis) & ECF No.15, PageID.110-13 (plea colloquy).  At most, FCA admitted that payments to a Holiefield-related entity were "a form of 'relationship building' with the UAW and Holiefield."  Case No. 21-20031, ECF No. 14, PageID.55.

## B.     Potential Alternative Explanations for Various Outcomes Undermine But-For Causation Here.

Union negotiations are complicated.  There could be many reasons for a particular decision, outcome or concession.   The UAW represented over 40,000 FCA workers during the pendency of the conspiracy, and may have reasonably made decisions about wages, benefits and work locations unrelated to the Taft-Hartley payments.  Nancy Adams Johnson identified one alternative explanation for the temporary part-time worker issue:  obtaining benefits outweighed the loss of wages. ECF No. 7-8, PageID.679-80.   The *Ristovski* complaint provides another helpful example.  When union members wrote to UAW President Bob King to complain about concessions made in the 2011 negotiations, the response was that "such

10

provisions were made in light of the economic crisis of 2008."  ECF No.7-5; ¶55.[1]

Mr. King has not been implicated in the Taft-Hartley conspiracy.

Rather, "unions are rarely able to negotiate agreements that completely satisfy

the desires of all its represented members." *Bowerman* v. *UAW*, 646 F.3d 360, 369

(6th Cir. 2011).  "Inevitably differences arise in the manner and degree to which the

terms of any negotiated agreement affect individual employees and classes of

employees," but "[t]he mere existence of such differences does not make them

invalid." *Ford Motor Co.* v. *Huffman*, 345 U.S. 330, 338 (1953).

Numerous courts have declined to extend statutory victim status to interested

parties where the necessary causal link to the crime of conviction has not been

established. In *United States v. Sharp*, 463 F. Supp. 2d 556, 557 (E.D. Va. 2006),

the movant, who was abused by her boyfriend after he bought drugs from the

defendant, was "unable to demonstrate that her injuries would not have occurred but

for" the drug conspiracy.  The court found that even if it accepted all of her

"allegations as conclusively true, she would still lack a remedy under the CVRA, for

there are too many questions left unanswered concerning the link" between the

defendant's "federal offense" and her "suffered abuse."  *Id*.    The Second Circuit

---

[1] PageID numbers are illegible on Petitioners' exhibits that are filings from other
federal cases, located at ECF Nos. 7-2 through 7-7.

reached a similar result in *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009). Even though "the evidence may suggest some linkages between" a murder and a drug conspiracy, the court of appeals did not find any clear error in the district court's conclusion that the putative victim "ultimately failed to show the requisite causal connection between the two." *Id.* And, in *In re Doe*, 264 F. App'x 260, 264 (4th Cir. 2007), "the chain of causation between" a drug manufacturer's conduct in misbranding OxyContin and the movant's addiction to the drug was "too attenuated" to establish statutory victim status.

### C. Petitioners Aren't Really Sure About Causation Either.

Petitioners' inability to establish that their various alleged harms were in fact caused by FCA's illegal payments is apparent from their pleading language in the civil litigation. They consistently allege causation only "by information and belief." For example, in the *Slight II* proposed Second Amended Complaint, they speculate that "[b]y information and belief, among the company-friendly positions that the UAW and its officials took in exchange for receiving bribes from FCA was the UAW's handling of plaintiffs' pay and benefits and seniority status, grievances, internal inquiries, lawsuit and internal appeals." ECF. No. 7-3 at ¶69. Likewise, in their *Ristovski* and *Baltrusaitis* pleadings, they suppose that "[b]y information and belief, under Jewell's leadership, the UAW withdrew, ignored or short-shrifted

12

plaintiffs' grievances and complaints … based on the fact that Jewell and other UAW officials were taking bribes from FCA at the time plaintiffs' issues were pending." ECF No. 7-5 at ¶43 (*Ristovski*);  ECF No. 7-4 at ¶67 (*Baltrusaitis*). Similarly, they admit in the instant motion that they required, but did not obtain, "discovery" to "determine whether there was a connection between the bribery and the actions taken against the plaintiffs" by the UAW in one of the Ohio cases involving the Wrangler plant.  ECF No. 7, PageID.377-78.

Petitioners also seek discovery here.  But none of the relevant authorities allow movants to demand discovery of grand jury material and other investigative documents from the government, or insist upon an order requiring the government to adopt their cause.  For good reason, the government is obligated to support statutory victims, and it does so gladly.  But the government is not obligated to take over for interested parties seeking to obtain statutory victim status when, as unfortunate as it might be, the evidence obtained through the government's independent investigation simply does not support the relief they seek.  *See*, *e.g.*, *Local #46*, 568 F.3d at 88 (government "did not have any obligation to support" nonvictims).

Petitioners' attempt to establish statutory criminal victim status through an observation this Court made in another proceeding also misses the mark, because it

overlooks an important procedural nuance.  In *General Motors LLC v. FCA US LLC*,
No. 19-CV-13429, 2020 WL 3833058, at *1 (E.D. Mich. July 8, 2020), GM alleged
civil RICO and other claims against FCA.   FCA moved to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6).   Of course, when resolving a 12(b)(6)
motion, all of the plaintiff's allegations are taken as true.  *Id*. at *6.  Accordingly,
the Court noted that, taking GM's allegations as true -- including the allegation that
UAW officials made concessions because they were paid "bribes" -- the "direct
victims" in such a circumstance would be FCA's UAW workers, not GM.  *Id*. at *9-
10.  By contrast, our very task now is to determine whether the causal link between
concessions and "bribes" -- a link that was necessarily accepted as true for purposes
of the 12(b)(6) motion -- exists or not.

### D.      The Johnson Affidavit Does Not Change the Causation Calculus.

Petitioners' attempt to bridge their causal gap with an affidavit from Nancy
Adams Johnson also falls short.  Ms. Johnson is a former UAW official who was on
the 2015 national negotiating committee and a defendant in Criminal Case No. 17-
20406.  She accepted over $40,000 in illegal payments from FCA, to include an
$1,100 pair of Christian Louboutin shoes, and pleaded guilty to the crime of
conspiracy to violate the Taft-Hartley Act in July 2018.  Ms. Johnson has cooperated
in the government's investigation.   She was also a named defendant in three of

Petitioners' civil lawsuits. It may be significant that after receiving her affidavit, Petitioners dismissed their three pending civil complaints against her. *See* Case No. 20-12793, ECF No. 58, PageID.1205 (May 13, 2021 notice of dismissal in *Baltrusaitis* case pending before Judge Cleland); Case No. 21-10452, ECF No. 44, PageID.546 (May 13, 2021 notice of dismissal in *Ristovski* case pending before Chief Judge Hood); Case No. 20-01590 (N.D. Ohio) ECF No.61, PageID.815 (May 13, 2021 notice of dismissal in *Slight II* case). The Johnson affidavit is speculative, and in some cases, serve the opposite function of undermining Petitioners' position.

## 1.    The Affidavit Is Speculative.

Ms. Johnson's information is too speculative to create the but-for nexus between the prohibited payments and the various categories of alleged harm. The affidavit states that while Ms. Johnson was a UAW official (2001-2016), she "was not aware that specific acts by UAW officials that appeared to benefit FCA were necessarily in exchange for bribes to them by FCA." ECF No.7-8, PageID.678. She only knew that the acts were "very suspicious." *Id*. Now, in hindsight, however, she "believes" that "such conduct was influenced by FCA bribes." *Id*. Like the Petitioners, she assumes that the reason Holiefield took certain actions is because of FCA's prohibited payments. But she does not have direct evidence of this causal connection beyond her own hunches.

15

The affidavit also explains that certain of Holiefield's actions "acquired new meaning" after Iacobelli was indicted.  *Id.*, PageID.680.  This suggests that the indictment was the first time that Ms. Johnson learned that FCA was making prohibited payments to Holiefield.  Far from a novice to FCA's prohibited payments, however, Ms. Johnson well-knew that FCA was making illegal payments to union officials long before Iacobelli's 2017 indictment.  She herself received over $40,000 of them between 2014 and 2016.

The government has been unable to identify a provable quid pro quo.  And so is Ms. Johnson.  At best, she "can think of no other explanation other than bribes." *Id.*, PageID.681.  But her beliefs, understandings, and assumptions -- all in hindsight -- are not proof.  If she received illegal payments from FCA without a quid pro quo, other UAW officials might have too.  Again, we just don't have the necessary proofs on this record, and FCA did not plead guilty to making the prohibited payments in order to influence decisions by UAW officials, including Ms. Johnson and Mr. Holiefield, which is a different offense under Section 186(a)(4).  In addition, the affidavit does not establish the crux of but-for causation:  that the absence of FCA's illegal payments would result in the non-occurrence of the movants' injuries.

### 2.    At Times, the Affidavit Cuts the Other Way.

Some of her information vitiates Petitioners' arguments.

First, Ms. Johnson does not "believe" that Holiefield would have accepted prohibited payments from FCA without a quid pro quo. She posits of Holiefield: "Now I get it. If someone is paying your mortgage, you hold grievances." *Id*., PageID.681. Maybe you do, but maybe you don't. She unlawfully received over $40,000 in "bribes" from FCA -- to include a $1,100 pair of exquisite French shoes -- yet she does not admit to any negative labor consequences to union members stemming from her own Taft-Hartley violations. Quite the opposite, she states that she worked hard to secure a fair and equitable contract in the 2015 negotiations. *Id*., PageID.684. Her situation presents the case study for a union official who received "bribes" without a provable quid pro quo.

Next, her affidavit undercuts the argument that Holiefield's grievance protocol harmed the movants because it clarifies that UAW President Bob King ultimately resolved the backlog. Ms. Johnson flatly asserts that Holiefield's legacy grievances "were all sorted out and dealt with" sometime between December 2013 and June 2014. *Id*., Page ID.681. It is unclear how the movants were harmed where, according to Ms. Johnson, UAW President Bob King took care of things.

Tellingly, the affidavit does not accuse Norwood Jewell of the same sins as Holiefield. Thus, Ms. Johnson does not present as a causation witness for any of the movants' allegations implicating Jewell. At best, she explains that Jewell "turned a

17

blind eye" concerning the issues with the temporary part-time workers.  But she does not claim that Jewell did so because of a "bribe" from FCA.  Rather, she offers that he wanted to "appease" a UAW official named Ken.  *Id*., 680.  This too undermines the argument that FCA's prohibited payments to Jewell were the cause of direct harm to the movants.

All told, Ms. Johnson's information simply does not show but-for causation. She does not establish that that in the absence of corruption in the collective bargaining process, the union worker would not have been paid a lower wage, would not have been assigned to a temporary part-time position, or would not have been required to drive farther to work.  What is more, she establishes that even if Holiefield shelved grievances on these issues, UAW President Bob King ultimately resolved them.  She also provides an alternate motivation for some of Jewell's behavior.

Here, as in *Sharp* and *Rendon Galvis*, there are "too many questions left unanswered concerning the link" between FCA's prohibited payments and Petitioners' harms.  *Sharp,* 463 F.Supp.2d at 566; *Rendon Galvis*, 564 F.3d at 175; *see also Fisher*, 649 F.3d at 404-05 (bribery scheme was not a but-for cause of competitor's losses in development project, and loss of opportunity to have projects considered on a "level playing field" due to defendant's bribery and concealment

18

did not render competitor a "crime victim;" evidence was "far too speculative" to establish that competitor's "projects would have been approved if bidding process had not been tainted by operation of criminal conspiracy").

## II.   Petitioners Are Not Entitled to Restitution Under the MVRA.

"'Because federal courts have no inherent power to award restitution,' restitution orders are proper 'only when and to the extent authorized by statute.'" *United States v. Sexton*, 894 F.3d 787, 799 (6th Cir. 2018) (quoting *United States v. Evers*, 669 F.3d 645, 655-656 (6th Cir. 2012)).   Petitioners rely upon the MVRA.

The MVRA applies only where (1) a defendant is convicted of a certain type of offense listed in the statute and (2) an alleged victim has suffered a pecuniary loss directly and proximately caused by defendant's conduct.   *See* 18 U.S.C. §3663A(c)(1)(A)-(B).  Although it raises an interesting -- and apparently, yet-to-be-decided -- legal question, for purposes of this motion, the United States does not dispute that FCA's Taft-Hartley conspiracy offense qualifies as one "for which restitution may be ordered."

However, like the CVRA, the MVRA has a traditional but-for causation requirement.  *See McNulty*, 597 F.3d at 350; *see also United States v. Alphas*, 785 F.3d 775, 786 (1st Cir. 2015) ("[U]nder the MVRA, a court may only order restitution for losses that have an adequate causal link to the defendant's criminal

19

conduct."). And Petitioners do not satisfy the MVRA definition of "victim" for all the same reasons that they do not meet the statutory definition of "crime victim" under the CVRA.

In addition, under the facts of this case, quantification of the pecuniary loss caused by FCA's prohibited payments would be inherently speculative. It would require the re-creation of a complex set of decade-old labor negotiations, in an alternate universe, with no corruption. Two of the most significant participants -- Messrs. Holiefield and Marchionne -- are deceased. And it would be incorrect to assume that every single concession that the UAW made would necessarily have to be reversed. In addition, some of Petitioners' complaints, such as failures of the grievance process, are procedural in nature. Even if a grievance was improperly shelved for a time, is there a quantifiable pecuniary loss when that same grievance was eventually reviewed and handled?

In creating the MVRA, Congress sought to ensure that victims receive the restitution to which they are entitled, while also "guaranteeing that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings." S. Rep. 104-179, 1995 WL 731704, at *18. Congress specifically sought to avoid having "the restitution phase of the sentencing process . . . devolve into a full-scale evidentiary hearing." *Id*. Thus, the MVRA

does not apply if a court finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663(A)(c)(3)(B).  Notably, in determining whether the complexity of a restitution determination is outweighed by the need to provide restitution, courts can consider "the availability of other relief in determining whether any restitution award would be appropriate[.]" *United States v. Gallant*, 537 F.3d 1202, 1253 (10th Cir. 2008).  Well over half of the movants are involved in pending civil RICO cases against FCA and the UAW.  Perhaps those fora are better suited to address these complex causation issues.

## **CONCLUSION**

For all of the foregoing reasons, the United States respectfully requests that the motion be denied.

SAIMA S. MOHSIN
Acting United States Attorney

*s/ Erin S. Shaw*
DAVID A. GARDEY
ERIN S. SHAW
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9100

Dated: May 25, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.


*Erin S. Shaw*
Assistant United States Attorney